**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES S.[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendants.

Case No. 1:25-cv-637

Cole, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff James P. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents four claims of error, which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for disability insurance benefits (DIB) in May 2023, alleging a disability onset date of May 12, 2022. His applications were denied initially and upon reconsideration. A telephone hearing was held on Junes 6, 2024, wherein Plaintiff appeared with counsel and gave testimony before ALJ Cristen Meadows. Vocational Expert Marne South, Ph.D., also appeared and gave testimony. On June 28, 2024, the ALJ issued a written decision, concluding that Plaintiff was not disabled. (Tr. 17-27).

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

Plaintiff was born in 1976 and was 48 years old on the date of the ALJ's decision. (Tr.). He has completed four or more years of college (Tr. 194). He has past relevant work as a delivery driver and production worker. (Tr. 25).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "depressive disorder; anxiety disorder; and bipolar disorder." (Tr. 20). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a full range of work subject to the following limitations:

> He can perform simple, routine tasks and make simple work-related decisions. He could work in low-stress jobs, defined as jobs with only occasional decision making required and only occasional changes in the work setting or duties. He could not perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. He could tolerate occasional interaction with coworkers or supervisors. He could do no joint tasks and have no over-the-shoulder supervision. He could have no interaction with the general public.

(Tr. 22). Based upon his RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could not perform his prior work but could perform other jobs that exist in significant numbers in the national economy, including day worker, cleaner, battery loader garment sorter and router. (Tr. 26). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 26).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to find that Plaintiff's mental impairments meet or medically equals the criteria of a listing impairment; (2) improperly evaluating the opinion

of Plaintiff's treating psychologist; (3) failing to comply with SSR 16-R when evaluating Plaintiff's symptoms; and (4) relying on hypothetical questions to the vocation expert that did not accurately portray Plaintiff's functional limitations. Plaintiff's contention is not well taken.

## I. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

1. *Step-three finding*

Plaintiff argues first that the ALJ erred in evaluating Listings 12.04 and 12.06, specifically the paragraph C discussion of Plaintiff's daily activities. Plaintiff's contentions lack merit.

At Step Three, plaintiff carries the burden to show that he has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets all of the criteria of a listed impairment, he is disabled; otherwise, the evaluation proceeds to Step Four. 20 C.F.R. § 404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); see also Rabbers, 582 F.3d at 653 ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review*." Reynolds v. Comm'r of Soc. Se*c., 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." Id. (citations omitted). The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec*., 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." Id. at 641 (quoting *Abbott v. Sullivan*,

905 F.2d 918, 925 (6th Cir. 1990)); see also *Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ erred by not conducting any Step Three evaluation of the claimant's physical impairments, when the ALJ found that the claimant had the severe impairment of back pain).

"A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting Sheeks, 544 F. App'x at 641-42). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." Id. (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." Id. at 433; see also *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error when a claimant could not show that he could reasonably meet or equal a Listing's criteria). The ALJ is only required to offer "minimal articulation" of her step three findings, and the Court can look to the decision as a whole to determine if the ALJ's step three finding is supported by substantial evidence. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014).

Here, at step-three the ALJ found that the severity of the Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. Notably, listing § 12.04 establishes the criteria for depressive, bipolar, and related disorders; and Listing § 12.06 establishes the criteria for anxiety and obsessive-compulsive disorders. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A), 12.04, 12.06. To meet the Listings' severity level for these categories of

disorders, a claimant must show that he meets: (1) the impairment-specific medical criteria in paragraph A; and (2) the functional limitations criteria in paragraph B or C. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

The "paragraph B" criteria inquire whether the claimant has one extreme limitation, or two marked limitations, among four domains of mental functioning: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04B, 12.06B. Each domain is rated using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Plaintiff does not challenge the ALJ's findings pursuant to "paragraph B" (Tr. 21-22).

The paragraph C criteria require a medically documented history of the existence of a "serious and persistent" mental disorder in the listing category over a period of at least two years, and there must be evidence of both: (1) medical treatment, mental health therapy, or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) marginal adjustment, that is, minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(c)

In the step three determination, the ALJ found that the paragraph C criteria was not satisfied because Plaintiff's mental impairments have not required ongoing medical treatment, mental-health therapy, psychosocial support, or a highly structured setting that diminishes the claimant's symptoms or signs. (Tr. 22). Additionally, the ALJ found that Plaintiff had not exhibited a minimal capacity to adapt to environmental changes or

demands not already part of his daily life. (Tr. 22). In this regard the ALJ noted that while Plaintiff attended therapy, he has not required either inpatient or emergent hospital treatment. Id. As such, the ALJ determined that Plaintiff did not rely on mental-health therapy, psychosocial support, or a highly structured setting to mitigate the symptoms or signs of his psychological impairments. Id. The ALJ further noted that Plaintiff performs some household chores, including caring for his children. Id.

Plaintiff argues that the ALJ erred in relying upon inaccurate information about his daily activities in assessing the severity of his mental impairments. The ALJ however, noted that Plaintiff performs some household chores, including caring for his children and that "[t]his illustrates that the claimant would not have difficulty adapting to changes in his environment or demands placed upon him." (Tr. 22). However, the record indicates Plaintiff does not have any children.

Plaintiff further argues that while the ALJ stated he did not require a highly structured setting or psychosocial support, he has never lived independently. In this regard, he has always lived with his mother in a structured home environment. (Tr. 198). Plaintiff also stated that he had never been able to be in any type of relationship with a significant other due to his issues. As such, Plaintiff contends that the ALJ erred in failing to consider the structured nature of his living arrangement in his assessment of Plaintiff's mental impairment.

As noted by the Commissioner, the ALJ's reference to Plaintiff's children was no more than a scrivener's error and does not change supportability of the ALJ's step-three finding. In this regard, the Commissioner notes that because substantial evidence still supports the ALJ's broader step-three determination and Plaintiff has not shown that he

satisfies the demanding paragraph C criteria. As noted above, Plaintiff had long-standing symptoms while still maintaining substantial work activity in earlier years, had not required inpatient or emergent psychiatric care, could assist his mother with chores, maintain personal needs with reminders, shop online, and drive himself to monthly appointments. (Tr 22). Thus, although the ALJ mistakenly referenced Plaintiff's 'children,' substantial evidence independently supports the ALJ's paragraph C finding based on Plaintiff's treatment history, work history, and ability to perform daily activities such as assisting his mother with chores, maintaining personal care, shopping online, and driving to appointments.

Plaintiff's argument that living with his mother necessarily established a "highly structured setting" is not persuasive on this record. The regulations explain that this "highly structured setting" category is satisfied when the claimant has minimal capacity to adapt to changes, and that the agency will determine that a claimant has achieved marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning, such as when the claimant becomes unable to function outside his home. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(c). The regulations also point to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D), which states that assistance from your family can count as a structured setting, such as when a family member administer your medications, remind you to eat, shop for you and pay your bills, or change their work hours so you are never home alone. Id. Additional criteria include supportive job programs, "24/7 wrap-around" mental health services while living in a group home, living in a hospital, and living alone without psychosocial supports but have created a highly

structured environment by eliminating all but minimally necessary contact with the world outside your living space. Id.

The Commissioner further notes that other Courts have found that merely living at home with one's parents is not a "highly structured setting." *Kyle T. v. Bisignano*, No. 25-CV-02048 (ECT/DJF), 2026 WL 331647, at *4 (D. Minn. Jan. 22, 2026) ("If living at home were the only qualification, approximately one third of U.S. adults aged 18 to 34 would qualify as requiring a 'structured living environment.'"), R&R adopted, No. 25-CV-2048 (ECT/DJF), 2026 WL 331216 (D. Minn. Feb. 6, 2026).

Here, while Plaintiff reported he received support from his mother, the evidence does not support assistance to a degree consistent with a highly structured setting as defined by Agency regulations. Plaintiff reported he had always lived with his mother, yet Plaintiff's earnings record indicates notably high earnings at the same time. (Tr. 175, 198).

In light of the foregoing, the undersigned finds that the ALJ's step-three finding is substantially supported. [2]

*2. Dr. Eggerman*

Plaintiff argues next that the ALJ erred in the evaluation of opinions of treating psychiatrist, Dr. Eggerman. Specifically, Plaintiff contends that the ALJ improperly determined that Dr. Eggerman's assessments were not consistent with the record evidence. Plaintiff's contention lacks merit.

[2] Additionally, Plaintiff argues that ALJ's rationale was unclear with respect to his finding that while Plaintiff attended mental health therapy, he did not require inpatient or emergent hospital treatment. (Tr. 22). As noted by the Commissioner, the lack of emergency treatment or inpatient treatment was properly considered by the ALJ and was relevant in light of the paragraph C requirements.

The current regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017. See 20 C.F.R. § 416.920c (2017). The current regulation at 20 C.F.R. § 416.920c differs from the previous regulation at 20 C.F.R. § 416.927 in several key areas. The agency no longer has a "treating source rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the current regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). Further, while the ALJ must articulate consideration of all medical opinions, the current regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 416.927(c)(2) with 20 C.F.R. § 416.920c(a), (b).

Here, the record indicates that from September 30, 2017 to October 20, 2019, Dr. Eggerman completed FMLA forms indicating, inter alia, that Plaintiff suffered from acute pain, anxiety depression and a major mood disorder which, during flareups, caused incapacity. (Tr. 479-491). Dr. Eggerman also indicated that Plaintiff's condition caused episodic flare-ups periodically preventing him from performing his job functions (Id.). Dr. Eggerman estimated Plaintiff would have flare-ups two times per month, with each episode lasting three days. (Id.).

Additionally, on June 24, 2024, Dr. Eggerman submitted a letter at the request of Plaintiff's counsel regarding Plaintiff's condition. (Tr. 492-493). In the letter, Dr. Eggerman

asserted that Plaintiff would require both intermittent and continuous leave due to his impairments and that he could not sustain full-time competitive employment. Id.

In formulating Plaintiff's RFC, the ALJ found that the assessments and correspondence of Dr. Eggerman were not persuasive. (Tr. 25). In this regard, the ALJ noted that Dr. Eggerman repeatedly asserted that Plaintiff's need for additional medical appointments and exacerbations of his psychological symptoms would prevent the claimant from working. (11F/3, 7, 10, 13). However, in support of these findings, Dr. Eggerman vaguely cited Plaintiff's symptoms, noting "acute panic attacks, anxiety, [and] depression" (Tr. 25) (internal citations omitted). The ALJ further noted that Plaintiff's response to treatment and the clinical signs that he displayed do not comport with this assessment. Additionally, the ALJ noted that Dr. Eggerman rendered the last of these assessments in 2019 and were therefore outside of the relevant period. (Tr. 25).

With respect to Dr. Eggerman's June 24, 2024, the ALJ noted that other than broad references to Plaintiff's impairments and treatments, Dr. Eggerman provided no support for his conclusions. (Tr. 25). The ALJ found that this assessment is not consistent with the remainder of the medical evidence, as previously discussed, specifically Plaintiff's generally positive response to medication, his limited and routine treatment, and the unremarkable clinical signs that he exhibited. Id. Finally, regarding opinions that the Plaintiff is "disabled" or "unable to work", the ALJ noted that adjudicators will not provide an analysis of medical opinions on issues reserved to the Commissioner of Social Security. Id. citing (20 CFR 404.1520b(c)).

Plaintiff argues that the ALJ's findings in this regard mischaracterize the evidence. Namely, Plaintiff contends that the ALJ's consistency analysis is not supported by

substantial evidence as Dr. Eggerman's office notes consistently documented abnormal clinical findings. (Tr. 324, 328, 449, 453, 457, 461, 464-465, 468) and he regularly adjusted medication dosages and/or prescribing different medications. (Tr. 318-332, 413-424, 446-475). The statements alleging "generally positive response to treatment" and "unremarkable clinical signs are simply inaccurate when every note from Dr. Eggerman say the opposite. As a result, Plaintiff contends that the ALJ's assessment of the opinion of Dr. Eggerman is not supported by substantial evidence. Plaintiff's contentions are not well-taken.

Notably, as long as the ALJ's decision, when read as a whole, shows that she substantively considered the supportability and consistency factors, the ALJ's decision must be affirmed. *See Dunlavy v. Comm'r of Soc. Sec.*, No. 24-3333, 2024 WL 4558606, at *3 (6th Cir. Oct. 23, 2024) (The ALJ evaluated the psychologists' opinion in the same section of her decision in which she discussed the inconsistencies in the record. That is enough to 'connect the dots.') (citations omitted). Although several of Dr. Eggerman's notes document abnormal mood and anxiety, the ALJ reasonably weighed those findings against other records reflecting improved mood, orientation, and functioning, as well as Plaintiff's conservative, largely outpatient treatment history. As such, the undersigned finds that the ALJ adequately addressed the supportability and consistency factors required by 20 C.F.R. § 404.1520c.

As noted above, the ALJ found that Dr. Eggerman's assessments did not provide sufficient support for his extreme limitations. Notably, Dr. Eggerman failed to provide any objective evidence or explanation for his conclusion that Plaintiff would have to miss work "continuously." See 20 C.F.R. § 404.1520c(c)(1) (defining supportability: the "more

relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."); 20 C.F.R. § 404.1502(g) (signs are objective evidence and "[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated."). The ALJ also found Dr. Eggerman's pre-2020 FMLA-type opinions unpersuasive because they predated the relevant period and were difficult to reconcile with Plaintiff's substantial gainful work during the years when those opinions were rendered.

The ALJ also permissibly found the June 24, 2024 letter unpersuasive. As the ALJ explained, the letter offered only broad references to symptoms and treatment while endorsing extreme work-preclusive limitations, including a need for continuous or intermittent leave and inability to sustain full-time competitive employment. The ALJ further found those conclusions inconsistent with Plaintiff's routine and conservative treatment, mixed but sometimes positive medication response, and the generally unremarkable objective findings elsewhere in the record, while also correctly recognizing that statements that a claimant is disabled or unable to work are issues reserved to the Commissioner. See 20 C.F.R. § 404.1520b(c)(3) (statements on issues reserved to the Commissioner are inherently neither valuable nor persuasive, including statements regarding whether the claimant is "disabled" or "unable to work").

In light of the foregoing, the undersigned finds that ALJ properly evaluated the opinion evidence. As noted by the Commissioner, as long as the ALJ's decision, when read as a whole, shows that she substantively considered the supportability and consistency factors, the ALJ's decision must be affirmed. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole when determining whether his consideration of the opinion evidence was consistent with the regulations). Such is the case here.

*3. SSR 16-3*

Plaintiff argues next that the ALJ failed to comply with SSR 16-3p in evaluating his subjective complaints. The argument is not well taken.

For decisions made on or after March 28, 2016, the ALJ evaluates a plaintiff's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3-p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. Instead of credibility, SSR 16-3 addresses the consistency of a plaintiff's statements without requiring an ALJ to assess the claimant's overall credibility, or character for truthfulness. 2017 WL 5180304, at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he is a truthful person.").

The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). Namely, "[a]n ALJ must first determine 'whether there is an underlying

medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner,* 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner,* No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. The Sixth Circuit has said that an ALJ's "credibility findings may not be disturbed absent compelling reason," and in general, "are virtually

unchallengeable." *Ritchie v. Comm'r of Soc. Sec*., 540 F. App'x 508, 511 (internal quotation marks omitted).

SR 16-3p provides adjudicators will not find claimants' symptoms inconsistent with the evidence without first considering possible reasons they may not comply with or seek treatment consistent with the degree of their complaints and provides adjudicators must develop the record concerning possible reasons for noncompliance. SSR 16- 3p, 2016 SSR LEXIS 4, *9-10. Adjudicators must explain how they considered claimants' reasons in their evaluation of the claimants' symptoms. Id. SSR 16-3p requires an ALJ to consider possible reasons why claimants fail to seek medical treatment consistent with the degree of their complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec*., 656 F. App'x 113, 119 (6th Cir. 2016).

Here, the undersigned finds that the ALJ properly evaluated Plaintiff's subjective allegations. The ALJ expressly acknowledged Plaintiff's testimony that he suffered disabling anxiety, medication-related drowsiness and dizziness, ineffective therapy, and job loss tied to mental-health issues, but found his allegations not entirely consistent with the longitudinal evidence. The ALJ noted that Plaintiff's mental complaints were longstanding and did not clearly worsen at the alleged onset date; that he did not seek psychiatric treatment for approximately two years before returning to Dr. Eggerman in 2023; that he did not pursue counseling during the relevant period; and that he did not require inpatient or similarly intensive treatment. (Tr. 23).

The ALJ also found that Plaintiff's mental health treatment was not consistent with the level of limitation he alleged. As noted by the Commissioner, Plaintiff did not return to see Dr. Eggerman until May 2023. In addition, Plaintiff did not attend further counseling

and did not require escalating treatment like inpatient care. (Tr. 23). The ALJ referred to several changes of medications but noted that Plaintiff reported that they helped the "chatter" in his head and stabilized his mood. (Tr. 24). The ALJ noted that Plaintiff's mental status examinations did not "support the severity of limitations the claimant has alleged," citing treatment notes from early to mid 2023 showing he was "oriented" with "improved" mood. (Tr. 24).

The ALJ also reasonably considered conflicting evidence concerning why Plaintiff stopped working. The decision acknowledged both the June 2022 primary-care note indicating Plaintiff had been laid off because of downsizing and the later evidence, including Plaintiff's testimony and Dr. Eggerman's view, that his job loss was related to mental-health symptoms. Resolving that conflict was the ALJ's task, and the existence of evidence supporting Plaintiff's interpretation does not permit the Court to reweigh the record.

Nor did the ALJ impermissibly ignore evidence concerning medication problems or abnormal mental-status findings. The decision expressly recognized that some psychotropic medications did not help and that Plaintiff alleged side effects such as drowsiness and dizziness, while also noting reports that medications reduced the "chatter" in his head, improved mood, stabilized sleep, and otherwise provided some benefit. Similarly, although the ALJ did not catalogue every abnormal notation in Dr. Eggerman's records, she cited other examinations showing normal attention, orientation, affect, and thought content. Notably, it is well established that "[t]he law does not require the ALJ to discuss every piece of evidence that is supportive or inconsistent with the RFC."). *See Byler v. Kijakazi*, No. 5:20-cv-1822, 2022 WL 980099, at *9 (N.D. Ohio Jan.

21, 2022). *See also Kornecky v. Comm'r of Soc. Sec*., 167 F. App'x 496, 508 (6th Cir. 2006) (explaining that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

It remains the province of the ALJ, and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007). A credibility/consistency determination cannot be disturbed "absent a compelling reason." Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony, as the ALJ did in this case, where there are inconsistencies and contradictions among the medical records, his testimony, and other evidence*. Warner v. Comm'r of Soc. Sec*., 375 F.3d 387, 392 (6th Cir. 2004). Here, the ALJ noted many inconsistencies throughout his opinion. Having closely examined the record presented, the Court finds the ALJ's analysis of Plaintiff's subjective complaints to be substantially supported.

*4. Hypothetical Question*

Plaintiff argues last that the ALJ's decision is not supported by substantial evidence because the hypothetical question to the vocational expert failed to include the limitation that Plaintiff would miss work up to six days per month due to flare ups of his impairments.

It is well established that the hypothetical question must set forth with reasonable precision the claimant's impairments and need only include those impairments and limitations found supported by the record. S*ee Winslow v. Comm'r of Soc.* Sec., 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical

questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible.").

Here, Dr. Eggerman found that Plaintiff's mental limitations may require Plaintiff to miss work six days per month. However, as noted above, the ALJ reasonably found Dr. Eggerman's absenteeism opinion unpersuasive, and was therefore not required to include a six-days-per-month absence limitation in the RFC or hypothetical to the VE. Thus, the ALJ incorporated the supported limitations into the RFC and corresponding hypothetical question. (Tr. 23, 77). Accordingly, the ALJ's decision is substantially supported in this regard.

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES S.

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendants.

Case No. 1:25-cv-637

Cole, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).